**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **EMMA J. WHISBY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No. 5:13-cv-360 (MTT) (CHW) |
| | : | |
| **CAROLYN W. COLVIN,** | : | **Social Security Appeal** |
| **Acting Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Emma J. Whisby's application for benefits. Because the ALJ made an impermissible medical determination, it is **RECOMMENDED** that Plaintiff's case be **REMANDED** to the Commissioner pursuant to "sentence four" of 42 U.S.C. § 405(g).

## OVERVIEW

The sole issue presented in this social security appeal is whether the administrative law judge ("ALJ") had sufficient evidence before him to make an informed decision without ordering a consultative examination. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The [ALJ] has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision"). Plaintiff, who is indigent, and whose medical records consist largely of emergency-room visitation notes, argues that the ALJ should have ordered a consultative examination. (Doc. 13, pp. 9-11). The Commissioner, by contrast, argues that a consultative examination was not necessary.

Before addressing issue of whether the ALJ should have ordered a consultative examination—an issue that, as discussed below, should be resolved, narrowly, in Plaintiff's favor—this Recommendation will first summarize some of the relevant medical and administrative evidence in this case. In brief, the record shows that Plaintiff has a troubled history of substance abuse that, on several occasions, has caused or contributed to a number of physical accidents.

First, on May 23, 2003, Plaintiff claims that a male paramour "pushed [her] out of [a] car and then ran over both of [her] knees." (R. 77, 89). Plaintiff also claims that the same paramour "stabbed [her] 22 times." (R. 74, 89). Medical records dated March 18, 2007, somewhat corroborate Plaintiff's account of events: they reveal evidence of a "[g]unshot wound to the left knee approximately 15 years ago, stab wound[s] to [the] neck, back and arms [in] 2003, [and also that Plaintiff was] hit by a motor vehicle approximately 15 years ago with bilateral knee injury." (R. 295).

Second, in early September 2007, Plaintiff was hit by a car while walking down Sycamore Street in Macon, Georgia. An "Emergency Center Dictation" from the Medical Central of Central Georgia describes the event as follows:

> The patient was on Sycamore [S]treet. She was walking in the street. She states she ha[d] been consuming significant amounts of alcohol and cocaine. She was with a friend and she said the next thing she knew a car came. She was hit by a car. The patient flipped up into the air. She hit the windshield of the car, broke the windshield of the car with a hole in there with some of her hair in the windshield. She ha[d] a brief loss of consciousness as witnessed by police and bystanders. Police happened to be on the scene at the time. They stated that she was pulled off the car by the bystanders and EMS were immediately called. [There] was [a] brief loss of consciousness. The patient [] regained consciousness and started refusing C spine immobilization . . . . When she arrived in the emergency department, a

collar was immediately placed. The patient was examined . . . and laboratory and x-ray studies were immediately ordered along with starting 2 large IVs. There was [a] brief loss of consciousness. She states that she had a headache and some neck pain, but she denies any chest pain or abdominal pain. She does state that her shoulders are hurting especially on the right. The patient also is complaining of leg pain, femur pain and hip pain.

(R. 300)

Finally, in August 2010, Plaintiff was involved in a multiple vehicle accident while riding in a funeral home limousine. (R. 91, 411). There is no indication that drugs or alcohol played a role in this incident.

With regard to Plaintiff's administrative history, Plaintiff filed applications for Title II and Title XVI benefits in March 2010, but those applications were denied initially in May 2010, (R. 108–09), and on reconsideration in November 2010, (R. 110–11), and Plaintiff subsequently requested a review before an ALJ. A hearing was held on February 23, 2012, at which Plaintiff's attorney argued that "the evidence [was] insufficient to properly assess [Plaintiff's] orthopedic problems," and that a consultative examination should, therefore, have been ordered. (R. 71). Plaintiff's attorney specifically highlighted x-ray results from August 2011 that showed "advanced degenerative changes" in Plaintiff's left hip. (R. 70, 394) (Ex. 6F, p. 1). In her unfavorable opinion, though, the ALJ rejected Plaintiff's request for a consultative examination, noting that: "[Plaintiff] argued that the Consultative Report at Exhibit 4F consisted of a series of x-rays; however, I denied his request for an additional consultative examination[] because I find there was no conflict or inconsistency in the record that could not be resolved by records available from the treating source." (R. 56). The Appeals Council denied review in Plaintiff's case on July 24, 2013, and Plaintiff now seeks review before the Court under "sentence four" of 42 U.S.C. § 405(g).

3

**STANDARD OF REVIEW**

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

**EVALUATION OF DISAIBLITY**

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience."

*Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## DISABILITY EVALUATION IN THIS CASE

Following the five-step sequential evaluation process, the ALJ in this case made the following findings. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2007. (R. 51). At step two, the ALJ found that Plaintiff had the following "severe" impairments: "status post minimally displaced fracture of the lateral malleolus, spondylosis of the cervical spine; very mild anterolisthesis of L4 on L5, mild facet arthropathy L5-S1 bilaterally, and degenerative narrowing of the left hip joint with osteoarthritis." (R. 52). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or equaling the severity of one of the listed impairments. (R. 53). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform:

> light work . . . with exceptions. [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; however, she can never climb ropes, ladders or scaffolds.

(R. 53)

Based on this RFC assessment, the ALJ determined, at step four, that Plaintiff could perform her past relevant work as a "housekeeper cleaner." (R. 56–57). The ALJ also made alternative step-five findings, though, and found that Plaintiff could perform representative occupations such as "cashier" and "mail clerk." (R. 58). Based on both her step-four and step-five findings, the ALJ determined that Plaintiff was "not disabled" within the meaning of the Social Security Act.

## ANALYSIS

Although Plaintiff frames the issue in this case as whether the ALJ "failed to fully and fairly develop the record" by failing to order a consultative examination, (Doc. 13, p. 9), the essential question is whether the ALJ made impermissible medical findings with regard to the some of the raw, un-interpreted medical evidence in this case. There is no bright line between an ALJ's "playing doctor," which is not permissible, and an ALJ's making commonsense decisions, which is permissible, *see, e.g.*, *Castle v. Colvin*, 557 F. App'x 849, 852–54 (11th Cir. 20140). Determining where to draw the line between permissible and impermissible ALJ decision-making requires a fact-intensive review—an endeavor which Plaintiff does not undertake. *See id.*, at 854 ("Where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment") (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)).

Additionally, in deciding whether the ALJ in this case made an impermissible medical judgment—that is, whether the ALJ made an "uninformed" decision—the Court need not assess the record in a mechanical manner, as Plaintiff suggests. In her briefs, Plaintiff argued that only one piece of evidence, a November 2010 state-agency physical RFC assessment, (R. 385–93), converted the x-ray reports and other raw medical data in the record into proposed physical limitations. By assigning "little weight" to this state-agency assessment, thereby "rejecting" it, Plaintiff argues that the ALJ necessarily, and impermissibly, made similar conversions herself in making her own RFC assessment. (Doc. 13, p. 10; Doc. 16, pp. 2–4). This type of formulaic, "knock-out" analysis ignores the substance of the ALJ's opinion. The ALJ discounted the state-agency assessment in Plaintiff's favor because, according to the ALJ, it was not restrictive

enough in light of only a single, later-dated piece of medical evidence: Plaintiff's August 2011 left-hip x-ray report. In the ALJ's words:

> I afford little weight to [the] State Agency Medical Consultant who opined [that Plaintiff] was capable of medium work, as she did not have the evidence regarding the claimant's left hip.

(R. 56)

Nothing in the record suggests that the ALJ otherwise found fault with the state-agency evaluator's opinion, and therefore, there is no reason to doubt that the state-agency assessment is authoritative with regard to all of the other medical evidence apart from the August 2011 x-ray report. In other words, the mere fact that the ALJ used the words "less weight" in reference to the state-agency assessment does not either "knock out" that assessment from consideration, or obliterate the analysis contained within it.

Notwithstanding these defects in Plaintiff's argument, the ALJ does appear to have impermissibly "played doctor" with regard to the August 2011 x-ray report, and it is for that reason that a remand of this case is recommended. The August 2011 report itself reads only:

> There are advanced degenerative changes in the left hip with some subchondral sclerosis and subchondral cyst formation. This is consistent with developing advanced osteoarthritis. The right hip is normal. The degenerative change has progressed since August 7, 2010.

(R. 394)

Although this brief report was significant enough for the ALJ to discount the state-agency assessment, no evidence in the record indicates the extent to which Plaintiff's hip degeneration had "progressed since August 7, 2010."[1] Similarly, no evidence supports the ALJ's seemingly arbitrary decision to compensate for the unknown change in Plaintiff's medical status by limiting

---

[1]  Records from July 2012 suggest that the degeneration has continued to progress. (R. 421–45).

Plaintiff to "light work."[2] *Cf. Sassone v. Comm'r of Soc. Sec.*, 165 F. App'x 954, 961 n.5 (3d. Cir. 2006) (affirming an ALJ's determination that a claimant suffering from "osteoarthritis of the right hip" could perform modified light work consisting of "sitting in front of . . . TV cameras," where the ALJ relied upon the report of a "Commissioner's Medical Expert[] who himself cited the conclusions of other examining physicians").

The Commissioner argues that "an RFC assessment is not a medical assessment," and that the responsibility for determining a claimant's RFC "rests with the Commissioner, i.e., the ALJ," (Doc. 14, pp. 7–8), but this argument presumes, incorrectly, that the conversion of a bare diagnosis of "developing advanced osteoarthritis" into a set of specific, physical functional limitations is a "commonsense" judgment reviewable by courts. The Commissioner's argument also improperly conflates ALJs with state-agency consultants who also work on behalf of the Commissioner, and who—in contrast to ALJs—are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180 at *2.

Contrary to the Commissioner's argument, the ALJ in this case did more than make a simple RFC assessment. Rather, she "played doctor" with regard to an important, but limited piece of medical evidence. Because the August 2011 x-ray report suggests that Plaintiff's condition deteriorated during the relevant period, and because the ALJ found that Plaintiff was "not disabled" for the entire period without sufficient information regarding the nature of this deterioration, the ALJ's opinion was not an "informed" one. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The [ALJ] has a duty to develop the record where

---

[2] Of course, insofar as the ALJ relied on her own examination of Plaintiff at the administrative hearing, she improperly engaged in so-called "sit-and-squirm jurisprudence." *See, e.g.*, *Wilson v. Heckler*, 734 F.2d 513, 517–18 (11th Cir. 1984). *Cf.* (Doc. 56) ("Although I acknowledge the claimant has some limitations, I find she is still capable of light work, as the severity and intensity of pain alleged by the claimant is not supported by the objective medical evidence").

appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision"). On this basis, therefore, it is Recommended that the Court remand Plaintiff's case to the Commissioner with instructions to order a consultative examination of Plaintiff's left hip, if necessary.

<u>CONCLUSION</u>

After a careful consideration of the record, it is **RECOMMENDED** that this case be **REMANDED** to the Commissioner for a reevaluation of the evidence. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof.

**SO RECOMMENDED**, this 3rd day of December, 2014.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge